MAUDE THOMPSON, *et vir*, v. NEW YORK LIFE INSURANCE COMPANY.

197 So. 111
En Banc
Opinion Filed June 25, 1940

*Evan T. Evans,* for Appellant;

*Charles Cook Howell* and *Charles Cook Howell, Jr.,* for Appellee.

BUFORD, J.—This case is before us on Certiorari to a judgment of the Circuit Court of Duval County reversing the judgment of the Civil Court of Record and adjudging as a matter of law that the plaintiff in the Court below was not entitled to recover judgment.

The suit was on an insurance policy. The death of the insured occurred within two years after the issuance of the policy. The application for the policy was made a part

thereof and the policy was issued in consideration of the application and the premium paid for the same. The application for the policy was dated November 15, 1934, and contained the following questions:

"8. Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of

"(a)   the brain or nervous system?

"(b)   the heart, blood vessels or lungs?

"(c)   the stomach or intestines, liver, kidneys or bladder?

"(d)   the skin, middle ear or eyes?

"9. Have you ever had rheumatism, gout or syphilis?

"10. Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers?

"11. What physicians, or practitioners, if any, not named above have you consulted or been examined or treated by within the past five years?"

Questions 8, 9 and 10 were each answered "No" by the applicant. Question 11 was answered "None."

The application also contained the following stipulation: "On behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, I declare that I have carefully read each and all of the above answers, that they are each written as made by me, and that each of them is full, complete and true, and agree that the Company believing them to be true shall rely and act upon them. I expressly waive on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has heretofore attended or examined me, or who may hereafter attend or examine me,

from disclosing any knowledge or information which he thereby acquired."

The pleas of the defendant insurer alleged that the answers to questions 10 and 11 were false and untrue and were known to be false and untrue at the time the application was signed. The pleas alleged in detail the facts relied upon to show that the said answers were false and untrue.

The record shows that on May 1, 1936, the insured underwent a surgical operation for the removal of her right ovary and right fallopian tube and that on May 7, 1936, before recovering from said operation she died from intestinal obstruction and circulatory collapse which in common language means obstruction of the bowel and stoppage of circulation of the blood.

On trial a verdict and judgment was entered for the plaintiff.

Motion for new trial was denied. Writ of error was taken and the circuit court reversed the judgment on the ground that the motion for new trial should have been granted on grounds 3, 4, 5 and 6 of said motion for new trial, which grounds are as follows:

"3. The verdict is not supported by the evidence.

"4. The verdict is contrary to the greater weight of the evidence.

"5. There is difficulty in reconciling the verdict with the right and justice of the case.

"6. The court erred in refusing to direct the jury to find a verdict for the defendant."

The undisputed facts are that the insured had been examined and treated by a physician on numerous occasions within five years prior to her application. An analysis of her true medical history when she applied for the insurance, as shown by the record, was:

| "Dates | Doctor | Ailment | Treatment | ..Comments |
|---|---|---|---|---|
| Jan. 2nd | Robt. D. May | Influenza | Tincture nux vomica, | House visits |
| 9th, 17th, 19th (upon *all* Occasions | | | glycerine | |
| 21st, 23rd, 26th 29th, 1932 | | | Tincture gentian compound Syrup Europhoria comp. | |
| Feb. 2nd, 5th, 8th, 16th 1929 | | Influenza | Confined to bed, cough mixtures, mustard plasters, tonic vaccine therapy. | Vaccine therapy administered in a series of 3-5 Injected hypodermically. |
| May 10th, 17th, and 15th, 27th, 1929. | | Scanty menstruation and irregularity. | Glandular therapy. | Administered by tablet through mouth to stimulate action of ovaries. |
| July 5th, 1929. | | | Scanty menstruation. Right ovary size of lemon, right fallopian tube unknown | |
| December 11, 13, 16, 23, 31, 1929. | | | A series of vaccines. | |

| "Dates | Doctor | Ailment | Treatment | Comments |
|--------|--------|---------|-----------|----------|
| March, 1930 | | Scanty menstruation. Right ovary size of lemon, now systic. | Glandular therapy | Ovary contains fluid. . |
| April, 1930 September 2, 3, 4th, 1931. | | Wart | Removed electrically. | |
| March 8, 9, 11, 14, 16, 18, 22, 24, 26, 28, 30, 1932. | | Secondary anaemia. Profuse menstruation. | Confined to bed, ice bags, sedative, calcium lactate, glandular tablets, Armor's liver extract. | Profuse menstruation is known medically as 'Menorrhagia.' |
| April, 1932. | | Same condition." | | |

The record shows conclusively that the condition which necessitated the operation was directly connected with the conditions which the physicians found present and treated the applicant for on July 5, 1929, and on March 30, 1929, and were related to and connected with the condition which required treatment in March and April of 1932.

The right ovary and fallopian tube which were affected in 1929 and 1930 and 1932 were the same that required the performance of the operation in 1936.

The question before us here is not, however, what effect the infirmities existing when the applicant was treated by a physician in 1929, 1930, 1931 and 1932, may have had in connection with the death of the insured.

As stated by Circuit Judge Taft in Penn. Mutual Life Insurance Co. v. Mechanics Savings Bank & Trust Co., 72 Fed. 413, 38 L. R. A. 33, and quoted with approval in Jefferson Standard Life Insurance Co. v. Clemmer, 4 C. C. A. (1935), 72 Fed. (2nd) 724, "Materiality of fact in insurance law is subjective. It concerns rather the impression which the fact claimed to be material when reasonably and naturally conveyed to the insurer's mind *before* the event and at the time the insurance is effected than the subsequent actual causal connection between the fact or the proper cause it evidences, and the event." See also Hurt, et al., v. New York Life Insurance Co., 41 Fed. (2d) 393; Empire Life Insurance Co. v. Jones, Ga. Circt. Court of Appeals, 82 S. E. 62; Lee v. Metropolitan Life Insurance Co., 158 Ga. 517, 123 S. E. 737; National Life & Accident Insurance Co. v. American Trust Company, Tenn. Court of Appeals, 68 S. W. (2) 971.

The chief medical director who approved the insured's application testified in effect that had he known her real medical history, he would have rejected her application and he also testified that reputable insurance companies generally would have done so.

In Hermann v. Court of Honor, 193 Ill. App. 366, the proof showed that about 3 years prior to the issuance of the policy the insured had "had a serious disorder of the ovaries and fallopian tubes" for the correction of which it became necessary to take her to the hospital and to remove said organs by a "major surgical operation." The application did not reveal the existence of any of these disorders, but denied them. The court in reversing the judgment in favor of the beneficiary said: "These statements were made warranties by the language of the application, but even if they had been representations only, they were material to the

risk and their untruth made the certificate void from the first."

In Mutual Life Insurance Co. of New York v. Denton, 93 Fla. 276, 112 Sou. 53, we held:

"In an action upon a life insurance policy a plea, that the insured in his application for the policy made an untrue representation that he had never made an application nor submitted to an examination for life insurance upon which a policy had not issued on the plan and premium rate originally applied for, sets up a good defense.

"A signed application for life insurance, a doctor's physical examination of the applicant, an unfavorable report and a destruction of the application by the applicant or agent through whom it was made constitute proof of the plea mentioned in the first headnote.

"An applicant for life insurance should exercise toward the company to which he applies for insurance the same degree of good faith which the company is required to exercise toward him.

"A representation by an applicant for life insurance that he had made no prior application for life insurance in any company is material, and if untrue will vitiate the policy if issued."

The case of Mutual Life Insurance Co. v. Hilton-Green, 141 U. S. 613, 50 Law Ed. 1202, which was cited with approval in the Denton case, *supra,* originated in the District Court in this State. The late Judge Sheppard directed a verdict for the Insurance Company. The Circuit Court of Appeals for the Fifth Circuit reversed the District Court judgment and thereafter the Supreme Court of the United States reversed the Circuit Court of Appeals and affirmed the judgment of the District Court.

In Aetna Life Insurance Co. v. Moore, 231 U. S. 543, 58 L. Ed. 356, the applicant assumed to answer the question, "What are the names and residences of all the physicians whom you have personally employed or consulted during the last five years?" The applicant gave the name of only one physician, when in fact, there was testimony that he had consulted others. The Insurance Company, because of this and other false answers with respect to additional phases of the application, requested charges embracing the proposition that the answers to questions contained in the application were representations material to the risk by which he was bound without regard to his good faith and that therefore, the answers, if untrue, would make the policy void. The Supreme Court held (see 58 L. Ed. text 365, 366) that under the circumstances the refusal of the instructions was reversible error.

In Sovereign Camp, W. O. W., v. McDonald, 76 Fla. 599, 80 Sou. 565, judgment for the beneficiary plaintiff was reversed by this Court wherein it was held:

"Where an application for a certificate of life insurance in a fraternal life insurance company contains a clause certifying, agreeing and warranting that the applicant is in sound health, of temperate habits, and has no disease or injury that will tend to shorten his life, and that the application to which he attaches his signature shall constitute the basis for and form a part of the beneficiary certificate, and further agreeing, certifying and warranting that all the statements, representations and answers in the application are full, complete and true, and that any untrue statement or answer made by the applicant or any concealment of facts in the application, intentional or otherwise, shall render the certificate void, and the certificate afterwards issued upon such application declares that the application consti-

tutes the contract or agreement between the insurer and insured, the statements and representations made by the applicant concerning his health and habits and the absence of injury or disease that will tend to shorten his life are warranties, and if such statements were untrue as made in the application they operate to defeat a recovery upon the certificate of insurance."

An insurance company is not bound to accept any risk that is offered. It may exercise its discretion and its judgment as to whether or not it will issue a policy of insurance upon the life of any particular individual. Before it reaches a conclusion it is entitled to have such information as it may desire in regard to the health, habits and physical condition of the applicant. It is the duty of an applicant for insurance to answer truthfully the questions which he assumes to answer and which are to become a part of his application. and of the insurance contract. Whether or not these questions and answers disclose facts material to the risk are matters for the insurer to determine and it can only reach a fair determination when furnished with truthful answers.

It follows that the Writ of Certiorari should be, and is, denied.

So ordered.

TERRELL, C. J., and BROWN, J., concur.

THOMAS, J., agrees to judgment.

WHITFIELD and CHAPMAN, J. J., dissent.

THOMAS, J.—I agree to the conclusion because of the conviction that the matter as presented is not one reviewable by certiorari.